# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT McADAM,<br><br>                                         Plaintiff,<br><br>     v.<br><br>STATE NATIONAL<br>INSURANCE COMPANY, INC.,<br><br>                                         Defendant. | CASE NO. 12cv1333-BTM (MDD)<br><br>ORDER GRANTING<br>PLAINTIFF'S MOTION TO<br>COMPEL BETTER RESPONSES<br>TO DISCOVERY<br><br>[ECF NO. 32] |

On September 3, 2013, Plaintiff filed the instant Motion to Compel Better Responses to Discovery.  (ECF No. 32).  Defendant responded in opposition on September 18, 2013.  (ECF No. 37).  The Court held a hearing on the motion on September 27, 2013.  (ECF No. 39).  Following the hearing the Court ordered as follows:

> (1) Defendants shall review all documents, currently withheld, listed in any privilege log previously provided to Plaintiff. On or before October 2, 2013, Defendants shall produce any document previously withheld for the protection of work product, and any document that upon review Defendants deem are not subject to privilege. Defendants will, at that time, also produce a revised privilege log listing any documents that they intend to continue to withhold. (2) On October 7, 2013, Parties shall meet and confer regarding any documents that are not produced by Defendants on October 2. (3) Any document produced either formally, or informally at the meet and confer, will be subject to Fed. R. Evid. 502(d). Thus, any document produced will not constitute a waiver of privilege. (4) Should a dispute remain, regarding withheld

documents, the Parties shall file a joint motion regarding such dispute on or before October 14, 2013. (5) Any documents that remain in dispute shall be delivered to chambers for in camera review on October 15, 2013.

(*Id.*)

On October 15, 2013, the parties filed a joint brief regarding items remaining in dispute.  (ECF No. 40).  Defendant submitted to chambers for *in camera* review documents withheld from production.  Defendant asserted attorney-client privilege for some documents and also withheld documents regarding its re-insurance policy and policy reserves as "proprietary" and based upon relevance.   On October 16, 2013, the Court held a telephonic conference with counsel for the parties inviting additional briefing regarding the withholding of the remaining documents.  On October 28, 2013, each party submitted additional briefing.  (ECF Nos. 42, 43).

At this juncture, Defendant has agreed to produce the policy it holds with its re-insurer, Wind River Reinsurance Company, agreed to produce reports between its claims administrator, Optimum Claims Service, Inc., and Wind River, and agreed to produce Optimum's claim handling guidelines.  (ECF No. 43).  Defendant redacted from the reports between Optimum and Wind River information regarding loss reserves.  Defendant continues to assert attorney-client privilege for communications between it and attorneys from the law firm of Gordon & Rees, LLP, and between Gordon & Rees and marine surveyor Arnold & Arnold.

What remains is for the Court to rule upon the propriety of the assertion of attorney-client privilege regarding the withheld communications and the propriety of the withholding of information regarding the reserve established by Wind River regarding Plaintiff's

12cv1333-BTM (MDD)

claims.

Factual Summary

The following factual summary is from the Order of District Judge Barry Ted Moskowitz, on Defendant's Motion for Judgment on the Pleadings.

> This action arises out of a "Hull and Machinery/Protection and Indemnity" Policy ("Policy") issued by Defendant to Plaintiff Robert McAdam for the term May 5, 2011 to May 5, 2012.
>
> Plaintiff is the owner of the vessels Jessica M and Shirley B, both of which are insured under the Policy. In late 2011, Master Marine, Inc. ("MMI"), in Bayou La Batre, Alabama, performed repairs and upgrades on Jessica M and Shirley B to convert the vessels from shrimp trawlers to deep sea fishing boats. The repairs included work on the vessels' rudder and shaft assemblies.
>
> On February 24, 2012, Shirley B's rudder snapped off while the vessel was fishing near New Zealand. Jessica M, which was 70 miles away, came to provide assistance and towed Shirley B to port in Tauranga, New Zealand. Defendant directed the Shirley B to a repair yard in Whangarei, New Zealand.
>
> Repairs totaling $162,283.74 were made on the Shirley B. Defendant's surveyor determined that the loss of the rudder was caused by faulty work of MMI. Defendant reimbursed Plaintiff $114,375.07 for the repairs, deducting amounts for repairs that it deemed betterment.
>
> The Jessica M also underwent repairs in New Zealand. The Captain of the Jessica M noticed "play" in the rudder while towing the Shirley B, and according to Plaintiff, subsequent testing and inspection showed that Jessica M suffered from the same repair defects as the Shirley B – i.e., welds that were not full-penetration and provided no strength or stability to the rudder area.
>
> When Plaintiff tendered a claim for the repair of Jessica M, Defendant denied coverage. Defendant took the position that the "play" in the rudder was due to lack of maintenance of the rudder stock and bearings, not faulty welds.

(ECF No. 9).  It appears the claim was denied in May 2012.  Plaintiff filed suit on June 4, 2012.  (ECF No. 1).

//

Attorney-Client Privilege

*Legal Standard*

The Ninth Circuit consistently has described the attorney-client privilege as protecting communications: (a) where legal advice of any kind is sought; (b) from a professional legal advisor in his capacity as such; (c) relating to that purpose; (d) made in confidence; (e) by the client; (f) that are at the client's insistence permanently protected; (g) from disclosure by himself or the legal advisor; (h) unless the protection be waived. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009); *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). The party asserting the privilege has the burden of establishing all of its elements and, even if established, the privilege is strictly construed. *Id*. at 999-1000.

In *Ivy Hotel San Diego, LLC v. Houston Casualty Co.*, 2011 WL 4914941, *3-4 (S.D.Cal. 2011), District Judge Sabraw of this Court described the manner in which state law governing privilege is applied in a federal court sitting in diversity, stating:

> In a federal action based on diversity jurisdiction, state law governs attorney-client privilege claims. Fed.R.Evid. 501; *Star Editorial, Inc. v. United States District Court for the Central District of California (Dangerfield)*, 7 F.3d 856, 859 (9th Cir.1993); *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D.Cal.1998). Under California law, "evidentiary privileges such as the attorney-client privilege are governed by statute. *HLC Props., Ltd. v. Superior Court*, 35 Cal.4th 54, 59, 24 Cal.Rptr.3d 199, 202, 105 P.3d 560 (2005); *Moeller v. Superior Court*, 16 Cal.4th 1124, 1129, 69 Cal.Rptr.2d 317, 320, 947 P.2d 279 (1997). California Evidence Code section 954, confers a privilege on the client "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer.... Cal.Evid.Code § 954. "Confidential communications include information transmitted between attorney and client, and 'a legal opinion formed and the advice given by the lawyer in the course of that relationship.' " *Calvert v. State Bar*, 54 Cal.3d 765, 779, 1 Cal.Rptr.2d 684, 691, 819 P.2d 424 (1991) (quoting Cal. Evid.Code § 952). "The attorney-client privilege attaches to a

confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material." *Costco Wholesale Corp. v. Superior Court*, 47 Cal.4th 725, 734, 101 Cal.Rptr.3d 758, 219 P.3d 736 (2009). In determining whether the attorney-client privilege attaches to communications, California courts look to the "dominant purpose of the relationship" between the client and the attorney. *Id.* at 739, 101 Cal.Rptr.3d 758, 219 P.3d 736.

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, *i.e.*, a communication made in the course of the attorney-client relationship." *Id.* at 733, 101 Cal.Rptr.3d 758, 219 P.3d 736. "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Costco*, 47 Cal.4th at 733, 101 Cal.Rptr.3d 758, 219 P.3d 736 (citing Cal. Evid.Code § 917(a)); *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal.App.4th 110, 68 Cal.Rptr.2d 844 (1997)).

As in *Ivy Hotel*, the Court must determine whether Defendant's "dominant purpose" in retaining Gordon & Rees was to receive legal advice. The privilege would not apply if the dominant purpose was to have Gordon & Rees provide business advice or act as a claims adjuster. *Id.* at *4. The answer may be that Defendant hired Gordon & Rees to give legal advice and to act as a claims adjuster. In that case, the Court must determine which purpose was primary. *Id.*

*Analysis*

In *Ivy Hotels*, Judge Sabraw had the benefit of declarations from the attorney and the client regarding the fact and scope of the engagement. *Id.* In the instant case, the Court requested declarations from counsel regarding the fact and scope of the attorney-client relationship between Gordon & Rees and its purported clients, Defendant State National and maritime surveyor Arnold & Arnold. Defendant acknowledged the Court's request and stated that the necessary

declarations would be filed on October 15, 2013.  (*See* ECF No. 40, p. 4, fn 2).  No such declarations were filed.  Hundreds of pages of withheld documents, however, were provided to the Court for review.

Regarding Arnold & Arnold, the Court finds that Defendant has not carried its burden of establishing the preliminary facts necessary to support the exercise of the privilege.  No evidence of an attorney-client relationship has been provided to the Court.  In an abundance of caution, the Court reviewed the Arnold & Arnold documents submitted *in camera*.  Arnold & Arnold is a maritime surveyor and adjuster.  The communications between it and Gordon & Rees were predominantly regarding the investigation of Plaintiff's claims.  Many of the communications were between Optimum, the claims administrator, and Arnold & Arnold in which Gordon & Rees merely was copied.  The Court could not identify any documents or communications referring to a privileged relationship between Gordon & Rees and Arnold & Arnold.  The Court has received no evidence nor found any documents suggesting that communications with Arnold & Arnold are protected by virtue of the attorney-client relationship between Gordon & Rees and Defendant State National.  In communications with Plaintiff, some of which were contained within the withheld documents, Arnold & Arnold identified itself as an independent marine surveyor and adjuster assigned by the underwriter to investigate Plaintiff's claims.  The assertion of independence belies the claim that Arnold & Arnold's activities could be subsumed within the attorney-client relationship between Gordon & Rees and Defendant State National.

Accordingly, the Court finds that all documents withheld from Arnold & Arnold based upon an assertion of attorney-client privilege are to be provided to Plaintiff.  The privilege has not been established.  As a

12cv1333-BTM (MDD)

consequence, any such communications between Gordon & Rees and Defendant State National which were disclosed to Arnold & Arnold also must be provided to Plaintiff.

Regarding Defendant State National, the Court is satisfied that an attorney-client relationship existed with Gordon & Rees despite the fact that no supporting declaration was filed.  Among the withheld documents are letters to counsel for Plaintiff in which Gordon & Rees claims to have been retained as coverage counsel for Defendant.  Gordon & Rees is attorney of record for Defendant in this action.  Other than that, there is no evidence presented regarding when the relationship commenced and scope of the engagement.  The Court has reviewed the documents withheld on the basis of privilege to glean the "dominant purpose" of the engagement.  If the dominant purpose of the engagement was claims adjustment, there is no privilege.  *See Ivy Hotels* at *4.

The Court finds that until the filing of this lawsuit, on June 4, 2012, the dominant purpose of the engagement between Gordon & Rees and Defendant State National was claims adjustment.  Accordingly, all communications between Defendant State National and Gordon & Rees up to June 4, 2012, are not privileged and must be disclosed.  The Court agrees that communications on and after June 4, 2012, exclusively between Gordon & Rees and Defendant State National are privileged and may continue to be withheld.

Many of the communications withheld by Defendant State National are between Gordon & Rees and Optimum Claims Service, Inc. - apparently the claims administrator used by Defendant State National.  The Court is not aware of any expression by Gordon & Rees that it represents Optimum.  The Court has not been provided any evidence nor

discovered any documents in its review reflecting that Optimum is a client of Gordon & Rees.  There is no evidence that Optimum, as a claims administrator, is covered by any attorney-client relationship between Gordon & Rees and Defendant State National.  Accordingly, the Court finds that documents withheld by Defendant State National which consist of communications withheld on the basis of privilege between Gordon & Rees and Optimum must be disclosed.  Also, any communications withheld on the basis of privilege between Gordon & Rees and Defendant State National which includes representatives of Optimum similarly are not privileged and must be disclosed.

Disclosure of Reserves

*Legal Standard*

The Federal Rules of Civil Procedure generally allow for broad discovery, authorizing parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Also, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  *Id.*  Relevant information for discovery purposes includes any information "reasonably calculated to lead to the discovery of admissible evidence," and need not be admissible at trial to be discoverable.  *Id.* There is no requirement that the information sought directly relate to a particular issue in the case.  Rather, relevance encompasses any matter that "bears on" or could reasonably lead to a matter that could bear on, any issue that is or may be presented in the case.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 (1978).  District courts have broad discretion to determine relevancy for discovery purposes.  See *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).  Similarly, district courts have

broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). Limits also should be imposed where the burden or expense outweighs the likely benefits. *Id.*

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." *Id.* at 34(b). The responding party is responsible for all items in "the responding party's possession, custody, or control." *Id.* at 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document. *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D.Cal.1995).

<u>Analysis</u>

Defendant has withheld, on the basis of relevance, documents reflecting loss reserves established in connection with Plaintiff's claim. A review of the cases reflects that the decision whether or not loss reserve information is relevant in any given scenario depends upon the claims asserted by Plaintiff. In *Bernstein v. Travelers Insurance Company*, 447 F.Supp.2d 1100 (N.D.Cal. 2006), the allegations were that Travelers acted in bad faith by unjustifiably resisting claims and delaying payments. Reviewing both federal and state law, the court determined that loss reserve information may be relevant in determining the subjective intent component of a bad faith claim. *Id.* at 1108. *Flintkote*

1  *Company v. Gernal Accident Assurance Company of Canada*, 2009 WL
2  1457974 *3 (N.D.Cal. 2009).

3      Defendant attempts to distinguish between first-party insurance
4  disputes and third-party insurance disputes.  The Court finds the
5  distinction irrelevant in this case.  Plaintiff's have sufficiently established
6  that Wind River, the purported re-insurer in this case, is actually the
7  front-line insurer.  (*See* ECF No. 42 at 2).

8      The Court agrees with Plaintiff that his allegations of bad faith are
9  virtually indistinguishable from the allegations made in *Bernstein* and
10  *Flintkote*.  Consequently, the Court finds that evidence regarding loss
11  reserves established by Defendant and by Wind River are relevant and
12  subject to disclosure.

13                          Conclusion
14

15      For the foregoing reasons, Plaintiff's Motion to Compel Better
16  Responses is **GRANTED**.  Absent further Order, Defendant is provide
17  Plaintiff with the documents subject to disclosure under this Order no
18  later than ten (10) days from the date of this Order.

19      As provided by Fed.R.Civ.P. 37(a)(5)(A), the Court is required to
20  impose costs upon the party or attorney whose conduct necessitated the
21  motion.  The Court must provide an opportunity to be heard and must
22  impose costs unless the Court finds that the successful movant brought
23  the motion before attempting in good faith to resolve the dispute
24  informally; the opposition to the motion was substantially justified; or
25  other circumstances make an award of expenses unjust.  *Id.*  If Plaintiff
26  decides to request that costs be awarded, an appropriate motion should
27  be filed within fourteen (14) days of the date of this Order.  The motion
28  should contain the necessary documentation and declarations regarding

costs.  Defendant may file an opposition no later than seven (7) days following the filing of the motion for costs.

IT IS SO ORDERED.

DATED: November 1, 2013

Hon. Mitchell D. Dembin
U.S. Magistrate Judge