UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT McADAM,<br><br>                        Plaintiff,<br>   v.<br><br>STATE NATIONAL INSURANCE COMPANY, INC. and ROES 1 through 25, inclusive,<br><br>                      Defendants. | Case No. 12-cv-1333 BTM-MDD<br><br>**ORDER RE: OBJECTIONS TO THE ORDER COMPELLING BETTER DISCOVERY RESPONSES** |

Defendant State National Insurance Company, Inc. ("State National") and Arnold & Arnold, Inc. (collectively, "the objectors") have filed objections (Doc. 50) to the November 1, 2013 Order Compelling Better Discovery Responses in this case. For the reasons set forth herein, the Court **VACATES** the Order (Doc. 44) and the matter is **REMANDED** for further proceedings consistent with this Order.

## I. BACKGROUND

This case arises from a "Hull and Machinery/Protection and Indemnity" Policy ("Policy") issued by State National to Plaintiff Robert McAdam for the term May 5, 2011 to May 5, 2012. State National is a "program" underwriting firm that does not do claims adjustment itself. Plaintiff owns the

vessels *Jessica M* and *Shirley B*, both of which were insured under the Policy at all relevant times. On February 24, 2012, *Shirley B*'s rudder snapped off while the vessel was fishing near New Zealand. *Jessica M* sailed some 70 miles to help and towed *Shirley B* to port in Tauranga, New Zealand. State National directed the *Shirley B* to a repair yard in Whangarei, New Zealand. Both ships underwent repairs in New Zealand. Plaintiff sought reimbursement for repairs under the Policy. State National retained Optimum Claims Services, Inc. ("Optimum") for claims adjustment purposes. The claim concerning the *Jessica M* was denied in May 2012.

On June 4, 2012, Plaintiff filed this lawsuit, asserting the following causes of action: (1) breach of insurance contract; (2) breach of the implied covenant of good faith and fair dealing; (3) injunctive relief and restitution pursuant to Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (4) declaratory relief. The Court dismissed the third cause of action. (Doc. 9.) Discovery proceeded thereafter under the charge of Magistrate Judge Dembin.

A hearing on Plaintiff's Motion to Compel (Doc. 32) was held on September 27, 2013. At that hearing, State National's counsel requested an *in camera* review. Hr'g Tr. 13:3-11 (Doc. 49). Judge Dembin ordered the parties to meet and confer regarding remaining discovery disputes, and to file a joint brief concerning any materials that remain in dispute on October 14, 2013. (Doc. 39.) On October 2, 2013, the objectors produced over 560 pages of documents previously withheld, along with an amended privilege log. These documents included, *inter alia*, State National's reinsurance contract with Wind River Reinsurance Co. and Optimum's claim handling guidelines. (Doc. 43.) State National redacted, as irrelevant and "proprietary," information concerning loss reserves, and asserted the attorney-client privilege as to communications (a) between State National and Gordon & Rees, LLP ("G&R"), and (b) G&R and independent adjuster

and marine surveyor Arnold & Arnold ("A&A"). Over 650 pages remained in dispute. State National thereafter submitted the disputed documents for review *in camera*, and the parties filed supplemental briefs on October 28 (Docs. 42, 43). On November 1, 2013, Judge Dembin ruled (1) that Defendant had failed to establish a *prima facie* case of privilege as to documents that predate the lawsuit, and (2) the loss reserve information is discoverable because it is potentially relevant to the subjective intent component of Plaintiff's "bad faith" claim. (Doc. 44.)

State National and A&A filed a timely objection to Magistrate Judge Dembin's November 1, 2013 Order (Doc. 44). The objectors here challenge the findings that: (1) the dominant purpose of the engagement between G&R and State National was claims adjustment (Order 7:15-17); (2) Optimum is not covered by the attorney-client privilege (Order 8:2-4), and (3) A&A is not covered by the attorney-client privilege (Order 6:16-19). The objectors thus challenge the requirement that they produce all documents withheld on the basis of the attorney-client privilege that were created prior to June 4, 2012. They likewise challenge the Order to the extent it requires turning over allegedly privileged documents held by A&A or Optimum. There is no objection to the order to produce documents concerning reserves.

## II. STANDARD OF REVIEW

When considering objections to a magistrate judge's non-dispositive discovery order under Fed. R. Civ. P. 72(a), the district judge must modify or set aside any part of the order "that is clearly erroneous or is contrary to law." The "contrary to law" standard applies to a magistrate judge's purely legal determinations. Computer Economics, Inc. v. Gartner Group, Inc., 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999). The "clearly erroneous" standard applies to factual determinations and discretionary decisions. Id. See also

Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 623 (1993) (the review is "significantly deferential, requiring 'a definite and firm conviction that a mistake has been committed.'"). The question of whether an attorney-client relationship existed between two persons at a particular time is a question of fact. See Larsen v. Coldwell Banker Real Estate Corp., No. 10-0401, 2012 WL 359466, *5 (C.D. Cal. Feb. 2, 2012).[1]

### III. DISCUSSION

**A. The Attorney-Client Privilege in California**

1. Generally

State law governs attorney-client privilege claims in federal district courts sitting in diversity. Fed. R. Evid. 501. In California, clients enjoy a privilege "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer." Cal. Evid. Code § 954. Such communications include legal opinions formed and the advice given in the course of that relationship. Id. § 952; Calvert v. State Bar, 54 Cal. 3d 765, 779 (1991). The party claiming the attorney-client privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship. Costco Wholesale Corp. v. Superior Court, 47 Cal. 4th 725, 733 (2009) ("Costco"); United States v. Martin, 278 F.3d 988, 999-1000 (9th Cir. 2002) (the first part of establishing the privilege is demonstrating that

---

[1] As a preliminary matter, the Court disregards declarations that were not before the magistrate judge (Docs. 50-6, 50-7, 50-8). An objection filed pursuant to 28 U.S.C. § 636(b)(1)(A) or Rule 72(a) may not be wielded as a shoehorn to add material to the record. United States v. Howell, 231 F.3d 615 (9th Cir. 2000) ("[I]t would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge." (citation omitted)). See generally Williams v. McNeil, 557 F.3d 1287 (11th Cir. 2009); SEC v. Pattison, 2011 U.S. Dist. LEXIS 22398 (N.D. Cal. Feb. 22, 2011); Paramount Pictures Corp. v. Replay TV, No. 01-cv-9358, 2002 WL 32151632, *1 (C.D. Cal. May 30, 2012) (objecting parties may not present affidavits containing evidence not presented to magistrate judge).

legal advice was sought); In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 805 (Fed. Cir. 2000) ("the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services."). Once a *prima facie* claim of privilege is established, the communication is presumed to have been made in confidence and the opposing party has the burden to establish the communication was not confidential or that the privilege does not apply for other reasons. Id. The privilege "only protects disclosure of *communications* between the attorney and the client; it does not protect disclosure of underlying facts which may be referenced within a qualifying communication." State Farm Fire & Casualty Co. v. Superior Court, 54 Cal. App. 4th 625, 639 (1997). Furthermore, "documents prepared independently by a party, including witness statements, do not become privileged communications or work product merely because they are turned over to counsel." Wellpoint Health Networks, Inc. v. Superior Court, 59 Cal. App. 4th 110, 119 (1997).

### 2. The Dominant Purpose Test

Sometimes it is difficult to determine whether the attorney-client privilege attaches to a communication, particularly if there was ostensibly more than one purpose for the correspondence. If it served a dual purpose, one for transmittal to an attorney in the course of professional employment and one not related to that purpose, the question is which purpose predominates. Costco, 47 Cal. 4th at 739-40; 2,022 Ranch LLC v. Superior Court, 113 Cal. App. 4th 1377, 1398 (2003) ("communications reflecting the requesting of, or rendering of, legal advice are protected by the attorney-client privilege" but those reflecting "factual claims investigation" or "adjustment" records or reports are subject to discovery regardless of whether conducted by an attorney). As Judge Dembin noted, in the

1  insurance and warranty context, "this doctrine has developed [such that the]
2  privilege and work product are very narrowly construed. . . ." Hr'g Tr. 15:21-
3  16:1 (Sept. 27, 2013) (Doc. 49).
4      In determining whether a communication is privileged, the Court looks
5  to the dominant purpose of the attorney's work.  "Thus, the attorney-client
6  privilege does not apply where the attorney was merely acting as a
7  negotiator for the client, merely gave business advice, or was merely acting
8  as a trustee for the client." Clark v. Superior Court, 196 Cal. App. 4th 37, 37
9  (2011).  It follows that, when an insurer hires an attorney both to provide a
10 legal opinion and to serve as a claims adjuster, "the court must make a
11 determination of which purpose was primary." Ivy Hotel, San Diego LLC v.
12 Houston Casualty Co., No. 10-cv-2183, 2011 U.S. Dist. LEXIS 119746, *11
13 (S.D. Cal. 2011) (Skomal, M.J.) (quoting Umpqua Bank v. First American
14 Title Ins. Co., 2011 U.S. Dist. LEXIS 34088, *7 n.1, 2011 WL 997212, *3
15 (E.D. Cal 2011).  The objectors argue that the predominant purpose test
16 must be applied on a document-by-document basis. (Reply 2 n.3.)  The
17 Court disagrees.  "[I]t is not the dominant purpose of a particular
18 communication that dictates whether the attorney-client privilege is
19 applicable; rather the issue is what *was the dominant purpose of the*
20 *relationship*." Cason v. Federated Life Ins. Co., No. 10-cv-0792, 2011 WL
21 1807427, *2 (N.D. Cal. Oct. 17, 2011) (applying Costco).  See also Clark v.
22 Superior Ct., 196 Cal. App. 4th 37, 51 (2011) ("the focus of the inquiry is the
23 dominant purpose of the relationship between the parties to the
24 communication."); Umpqua Bank, 2011 U.S. Dist. LEXIS 34088 at *7 n.1
25 ("the court in Costco specifically stated that the initial question should be
26 about the dominant purpose of the *relationship*.").  If the dominant purpose
27 of the relationship was attorney-client at the time of the communications,
28 they are privileged.  If not, they are generally discoverable, though the

producing party may request an *in camera* inspection of a particular communication to support a claim that it should be protected nonetheless. See <u>Aetna Casualty & Surety Co. v. Superior Court</u>, 153 Cal. App. 3d 467, 476 (1984).  As the Court in <u>Costco</u> put it:

> The proper procedure would have been for the trial court first to determine the dominant purpose of the relationship between the insurance company and its in-house attorneys, i.e., was it one of attorney-client or one of claims adjuster-insurance corporation . . . . The corporation, having the burden of establishing . . . that the communications were made during the course of an attorney-client relationship, was free to request an *in camera* review of the communications to aid the trial court in making that determination, but the trial court could not order disclosure of the information over the corporation's objection.  If the trial court determined the communications were made during the course of an attorney-client relationship, the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by some other means.  If the trial court instead concluded that the dominant purpose of the relationship was not that of attorney and client, the communications would not be subject to the attorney-client privilege and therefore would be generally discoverable. However, even then, the corporation would be entitled to request an *in camera* review of a particular communication to support a claim that it should be protected despite the general absence of an attorney-client relationship.

<u>Costco</u>, 47 Cal. 4th at 739-40 (citations omitted).

       3. <u>State National's Failure to Provide Declarations</u>

At the September 27 hearing, defense counsel stated "I've made an offer of proof to the Court and I intend to back that up with appropriate declarations regarding the relationship."  Hr'g Tr. 28:7-9 (Sept. 27, 2013). This promise was reiterated weeks later in the parties' joint brief.  (Joint Br. Oct. 14, 2013) (Doc. 40 at 4 n.4) (stating that, on October 15, 2013, State National "will file with the Court declarations of George Soares, Wanda Didier, and Bill Arnold establishing the facts of the attorney-client relationship between Gordon & Rees LLP, Optimum Claims Services, State National, and A&A.").  Indeed, declarations as to the existence, nature, and scope of an attorney-client relationship may provide sufficient evidence of the relationship even in the absence of, e.g., a written retainer agreement.  See

Missigman v. USI Northeast, Inc. 131 F. Supp. 2d 495, 513 (S.D.N.Y. 2001). Yet no such declarations were filed; nor did State National request more time to file them.[2] Instead, counsel submitted over six hundred pages of documents *in camera* (Docs. 40-1, 40-2) unaccompanied by a declaration even though the Court was under no obligation to conduct an *in camera* review in the absence of declarations. See generally Cal. Evid. Code § 915(a) (prohibiting *in camera* review with respect to, *inter alia*, the attorney-client privilege, except where specifically requested by the party purportedly holding and asserting the privilege); In re Oracle Corp. Secs. Litig., 627 F.3d 376, 385 (9th Cir. 2010) ("It behooves litigants . . . to resist the temptation to treat judges as if they were pigs sniffing for truffles.").

The absence of declarations distinguishes this case from those cited by the objectors.[3] In Umpqua Bank and Ivy Hotel, the insurer hired an attorney to provide a coverage opinion and that attorney became a primary

---

[2] State National's counsel allegedly believed, based on an October 16, 2013 telephone conference, that he had additional time to provide declarations. (Decl. of Matthew Elstein ¶21.) That is questionable since the parties had until October 28, 2013 to file supplemental briefs (Doc. 41), and State National filed a brief on October 28 but did not mention the declaration deadline therein. But the record is murky and the contention is plausible, so the Court, though wary of granting an unwarranted mulligan, credits Mr. Elstein's statement.

[3] The objectors misquote Umpqua Bank for the proposition that "[t]here has not been a single case that has ever allowed an insured to obtain legal advice provided by an attorney to its insurer client because the 'dominant purpose' of the retention was claims adjustment. The mere fact that legal advice was provided establishes that the 'dominant purpose' was legal." (Objs. 11:19-23.) These sentences appear nowhere in Umpqua Bank, and they are wrong. See Syncora Guarantee. Inc. v. EMC Mortg. Corp., No. 13-mc-80037, 2013 WL 2552360, *3 (N.D. Cal. June 10, 2013); Fisher v. Kohl's Dept. Stores, Inc., No. 11-cv-3396, 2012 WL 2377200, *5 (E.D. Cal. 2012) (holding that the defendant "failed to make a sufficient showing that the dominant purpose of incident reports was transmission to an attorney for purposes of seeking legal advice" where the record lacked "a clear indication that they were in the first instance directed to an attorney for legal advice.").

point of contact regarding the claim.[4]  In Ivy Hotel, the purpose of the relationship was evidenced by a declaration of the insurer's senior claims attorney and representations of the attorney who served as a claims adjuster.  2011 U.S. Dist. LEXIS 119746 at *14.  Similarly, in Umpqua Bank, the court relied, in part, on representations at a hearing made by the insurer's in-house claims attorney who retained outside counsel. 2011 U.S. Dist. LEXIS 34088 at *10.  See also Kandel v. Brother Int'l Corp., 683 F. Supp. 2d 1076, 1082 (C.D. Cal. 2009) (preliminary facts supporting claim of privilege established by declarations).  The objectors point to no case finding the predominant purpose of a relationship involving claim adjustment to be attorney-client absent any testimonial evidence.  Thus, the Court could have refused to conduct an *in camera* review absent the promised declarations.  Yet if a judge *elects* to undertake an *in camera* review, even if it is "out of an abundance of caution," the disposition should reflect explanatory findings and conclusions demonstrating why the documents are or are not covered by the privilege.  See Su Hwa She v. Holder, 629 F.3d 958, 963-64 (9th Cir. 2010); United States v. Cal. Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1382 (9th Cir. 1997). For this reason, the Court continues its analysis herein.

**C.     *In Camera* Review**

As mentioned *supra*, Judge Dembin did not have to, but did, conduct an *in camera* examination of the disputed documents.  (Order 6.)  The Court has also reviewed the documents.  As discussed in the following subsections, many pages highlighted by the objectors do not evidence an attorney-client relationship.  For instance, a March 13-14, 2012 email chain indicates that G&R was serving as a general point of contact for claims adjustment purposes.  (SNIC2216.)  But others do convey legal advice.

---

[4] State National did not distinguish or otherwise refer to these authorities before Judge Dembin.  Compare Def.'s Objs. (Doc. 50-1) and Reply (Doc. 53) with Def.'s Opp'n to Pl.'s Mot. to Compel (Doc. 37).

That is important here because certain documents may be privileged even if created or communicated when an attorney-client relationship did not predominate. Costco, 47 Cal. 4th at 740.

   1. Gordon & Rees LLP

State National argues that Judge Dembin erred in concluding that the dominant purpose of the engagement between G&R and State National was claims adjustment up until the filing of this lawsuit on June 4, 2012 (Order 7). As evidence of a pre-litigation attorney-client relationship with George Soares of G&R, the objectors point to, e.g., State National's claims log (SNIC1812-1820) and a March 13, 2012 reference to "GS-cover counsel" in Optimum Claims Adjuster Wanda Didier's notes (SNIC1821-24). Additionally, the terms "coverage" and "coverage counsel" are scribbled on printouts of a March 9-13, 2012 email exchange between Mr. Soares and Ms. Didier discussing the claim adjustment. (SNIC2217, SNIC2224-26.) These documents say little or nothing about the existence or scope of an attorney-client relationship, and they are insufficient to establish an attorney-client relationship prior to the inception of litigation. See GE Capital Corp. v. DirectTV, Inc., 1998 U.S. Dist. LEXIS 18940, *7 (D. Conn. 1998) ("If the document was prepared for purposes of simultaneous review by legal and non-legal personnel, it cannot be said that the primary purpose of the document is to secure legal advice. Therefore, one of the critical elements of the attorney-client privilege is absent at the outset."). Cf. Garcia v. City of El Centro, 214 F.R.D. 587 (S.D. Cal. 2003) (the mere fact that a plaintiff filed a claim does not bring subsequent insurance investigations within the ambit of the work product doctrine).

However, the documents also include an April 25, 2012 letter from G&R to Ms. Didier providing an "evaluation of coverage" that ostensibly contains a legal analysis of the State National insurance policy covering the

*Shirley B*. (SNIC2158-SNIC2167.)  That letter, though addressed to Optimum, opines as to the extent to which State National is legally bound to cover damage claimed.  Although the insurer bears the burden of proof, this letter appears to be an attorney-client communication, as it was ostensibly written in response to a request for legal advice.  In this respect, this dispute is similar to the one faced in <u>Aetna Casualty & Surety Co.</u>, where it was undisputed that "Aetna retained [counsel] to investigate [a] claim and make a coverage determination under the policy." 153 Cal. App. 3d 467, 476 (Cal. App. 1st Dist. 1984). The Court explained:

> This is a classic example of a client seeking legal advice from an attorney. The attorney was given a legal document (the insurance policy) and was asked to interpret the policy and to investigate the events that resulted in damage to determine whether Aetna was legally bound to provide coverage for such damage.

<u>Id.</u>  The April 25 letter is not mentioned in the Order compelling discovery and it may well fall within the attorney-client privilege.  Whether the objection may be sustained as to advice contained in the letter turns on whether Optimum was acting as State National's agent with respect to it.[5]

The magistrate judge concluded that not one of the documents dated prior to the filing of this suit (June 4, 2012) is privileged.  But this broad conclusion may very well be in error.  The problem for this Court is that the record is unclear and the magistrate judge made only a summary conclusion on his reading of hundreds of pages of documents.  The best course of action is to have a full hearing as to the applicability of the privilege and decide the matter on very specific findings of fact and conclusions of law.  This matter is remanded for that purpose.

---

[5] <u>Costco</u> exhorts this result due to the decision to review documents *in camera* and the Order's flat summary of that review as to State National.  The situation in <u>Costco</u> was otherwise distinct because (a) there was no dispute that Costco engaged its attorneys to provide legal advice, and (b) the trial court did not find that the relationship's dominant purpose was anything other than legal advice.  <u>Costco</u>, 47 Cal. App. 4th. 725, 733, 735-36 (2009).

### 2. Optimum Claims Service, Inc.

Judge Dembin found that "[t]here is no evidence that Optimum, as a claims administrator, is covered by any attorney-client relationship between Gordon & Rees and Defendant State National." (Order 8.) This may be so, but as discussed in the preceding section, it is unclear from the record. Weighing against this finding are the April 25, 2012 opinion letter addressed to Wanda Didier of Optimum, and State National's indication that it communicated with G&R through Optimum (Objs. 10).

California Evidence Code § 952 states, *in extenso*:

> As used in this article, "confidential communication between client and lawyer" means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

Thus, the question is whether communications with Optimum were confidential disclosures "reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted." Cal. Evid. Code § 952. As discussed *supra*, the Court finds that the record is inadequate for proper review because the facts of the relationships between and among G&R, State National, and Optimum were not sufficiently established or otherwise revealed by the analysis and discussion of *in camera* documents. If, on remand, Judge Dembin finds that there was a primarily attorney-client relationship between G&R and State National prior to June 2012, then he must also consider whether the relationship between State National and Optimum was such that attorney communications with Optimum fell within the ambit of § 952. Except to the extent they fell within § 952, communications to or through Optimum are not

privileged, as the communication itself would be a third-party disclosure.[6]

### 3. Arnold & Arnold

The objectors argue that documents withheld by A&A were confidential communications within the scope of § 952, because they were "reasonably necessary to further the interest of the litigant." Insur. Co. of North America v. Superior Court, 108 Cal. App. 3d 758, 767 (1980) ("INA").  They also claim that A&A was an "authorized representative" of Optimum for purposes of Cal. Evidence Code § 951, an argument not raised before the magistrate judge.  Judge Dembin found nothing in the record "suggesting that communications with Arnold & Arnold are protected by virtue of the attorney-client relationship between Gordon & Rees and State National." (Order 6.) The Order, having found no attorney-client relationship between State National and G&R, did not expressly reach the question of whether communications with A&A could have fallen under the derivative protections of §§ 951 or 952.  To the extent A&A holds an otherwise privileged document, the relationship between State National and A&A is potentially important, as transmittal to a third party outside of §§ 951 or 952 generally destroys confidentiality. Grosslight v. Superior Court, 72 Cal. App.3d 502, 506 (1977) ("the attorney-client privilege does not protect information coming from a third party who is not a client unless the person is acting as the client's agent"). See also United States v. Gann, 732 F.2d 714, 723 (9th Cir. 1984) (communications made to attorney overheard by police while they were searching the defendant's home were not privileged because he knew or should have known that third parties were present).  As mentioned with respect to Optimum, *supra*, confidentiality is not destroyed to the extent the

---

[6] This question might be avoided with respect to the April 25 letter, as Plaintiff's counsel indicated that coverage opinions are outside the scope the discovery requests.  (Hr'g Tr. 21:12-14.)

communication was necessary to further the legal consultation.  See <u>Zurich Am. Ins. v. Superior Court</u> ("<u>Zurich</u>"), 155 Cal. App. 4th 1485, 1504 (2007) (remanding for determination of whether disclosure fell within scope of § 952); <u>INA</u>, 108 Cal. App. 3d at 765 ("The key concept here is need to know.  While involvement of an *unnecessary* third person destroys confidentiality, involvement of third persons to whom disclosure is reasonably *necessary* to further the purpose of the legal consultation preserves confidentiality of communication.").  As explained in <u>Zurich</u>:

> The need-to-know limitation . . . permits disclosing privileged communications to other agents of the organization who reasonably need to know of the privileged communication in order to act for the organization in the matter.  Those agents include persons who are responsible for accepting or rejecting a lawyer's advice on behalf of the organization or for acting on legal assistance, such as general legal advice, provided by the lawyer.

155 Cal. App. 4th 1485, 1500.

   To the extent the objectors ask the Court to find that communications with A&A are privileged based on the relationship between A&A and State National, they misread <u>INA</u>.  In <u>INA</u>, there was no question that attorney-client communications were at issue.  The issue was whether the presence of third party business associates (from the parent company and a sister company) destroyed the confidentiality of the communication.  Common ownership and control allowed the Court to find that "in a pragmatic sense, the parent company can be viewed as [the] ultimate client . . . ." <u>INA</u>, 108 Cal. App. 3d at 768-69 ("The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial . . . ." (citation omitted)).  Here, A&A was hired as a claims adjuster, and it apparently acted at the direction of Optimum.  (<u>See</u> ARNL1383.)  The objectors have demonstrated no unity of interest or identity among these entities.  To the contrary, A&A held itself out as an "independent"

adjuster assigned to investigate the claim. See generally Roush v. Seagate Technology, LLC, 150 Cal. App. 4th 210, 225 (2007) (absent an obvious reason or adequate explanation as to why communication to percipient witness was necessary to further litigation interest, the disclosure operates as a waiver of privilege).

Finally, State National cites Gen-Probe Inc. v. Becton, Dickinson and Co., 2012 U.S. Dist. LEXIS 49028, *10 (S.D.Cal. April 6, 2012) for the proposition that the communications are privileged because A&A was an independent contractor retained to perform the entity's functions. (Objs. 13.) In Gen-Probe, the court found that the privilege attached to an independent contractor who "was a functional equivalent of a[n] employee, working in tandem with RELA employees on Project Ginny." Id. at 11. This equivalency was evidenced by declarations and exhibits showing, *inter alia*, that he regularly worked with employees on the project at issue, the nature of his work was identical to the type of work performed by actual employees, and he was subject to similar levels of direction and supervision. Id. at *10-11. Here, State National established only that A&A adjusted claims and corresponded with G&R. State National even emphasized that it does not do claims adjustment. (Objs. 7.) Hence, A&A's work was not functionally equivalent to State National's. Moreover, no agency or attorney-client relationship between G&R and A&A has been demonstrated. See United States v. Gurtner, 474 F.2d 297, 299 (9th Cir. 1973) (communications with an accountant at counsel's suggestion were not privileged because the accountant was not shown to be acting as a consultant for the attorney); Holmgren v. State Farm Mutual Auto. Ins. Co., 976 F.2d 573, 576-78 (9th Cir. 1992) (applying similar analysis to work product in bad faith insurance case). Thus,

only confidential communications necessary to facilitate or effectuate legal counsel (as opposed to claims adjustment), may be privileged. On remand, Judge Dembin will decide whether any of A&A's documents fit that bill.

## IV.  CONCLUSION

For the reasons stated, the Magistrate Judge's November 1, 2013 Order (Doc. 44) is hereby **VACATED**.  It is accordingly

**ORDERED** that all matters pertaining to the document production are **REMANDED** to Magistrate Judge Dembin for analysis consistent with this Order.  Judge Dembin shall schedule another hearing, apply the predominant purpose test, and make particularized, written findings of fact and conclusions of law as to the application of attorney-client privilege to each of the documents to which the defendants continue to object.  This shall include, where appropriate, determinations of whether any of the communications made during a period when an attorney-client relationship did not predominate are nonetheless privileged.

**IT IS FURTHER ORDERED** that the parties may file, at a date set by Judge Dembin prior to the hearing, evidence concerning the nature of the relationships between and among Gordon & Rees LLP, Optimum Claims Services, Inc., State National Insurance Co., and Arnold & Arnold, Inc.  Plaintiff has leave to depose any person offering testimony as to the existence of an attorney-client relationship.

**IT IS SO ORDERED.**

DATED: March 21, 2014

BARRY TED MOSKOWITZ
Chief Judge
United States District Court