# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT McADAM,<br><br>                      Plaintiff,<br>  v.<br>STATE NATIONAL INSURANCE COMPANY, INC. and ROES 1 through 25, inclusive,<br><br>                    Defendants. | CASE NO. 12cv1333-BTM (MDD)<br><br>ORDER ON REMAND RE: PLAINTIFF'S MOTION TO COMPEL |

This matter comes to the Court on remand from the District Court's March 21, 2014, Order. (ECF No. 79.) The District Court remanded with instructions that this Court "make particularized, written findings of fact and conclusions of law as to the application of the attorney-client privilege" and to make "where appropriate, determinations of whether any of the communications made during a period when an attorney-client relationship did not predominate are nonetheless privileged." (*Id.* at 16.)

## I.    Procedural History

### A.    Plaintiff's Motion to Compel

On September 3, 2013, Plaintiff filed a Motion to Compel Better Discovery Responses from Defendants. (ECF No. 32.) A hearing was held on Plaintiff's Motion on September 27, 2013. (ECF No. 49.) After

some initial discussions between the parties, a dispute remained regarding over 650 pages of documents. Those documents were submitted to the Court for *in camera* review. The parties filed supplemental briefs regarding these documents on October 28, 2013. (ECF Nos. 42, 43.) On November 1, 2013, this Court issued an Order holding that Defendants, who had failed to provide the Court with any declarations supporting their position that the documents were privileged, had failed to establish a *prima facie* case of privilege as to documents created before the start of the instant lawsuit. (ECF No. 44.) Defendants State National and Arnold and Arnold ("A&A") timely filed objections to the Court's Order with the District Court on November 15, 2013. (ECF No. 50.)

**B.     The District Court's Order re: Defendants' Objections**

The District Court issued its Order re: Defendants' Objections on March 21, 2014. (ECF No. 79.) In the Order, the District Court made several findings. First, the District Court examined Defendants' contention that the documents at issue were privileged based on an attorney-client relationship between State National, A&A, Optimum Claims Services ("Optimum"), and Gordon & Rees LLP ("G&R"). The District Court noted that Defendants had failed to provide declarations regarding the nature of scope of that relationship, and that therefore this Court could have found that no privilege existed without conducting an *in camera* review. (*Id.* at 8.) The District Court further noted, however, that because this Court did in fact conduct such a review, it was required to perform a thorough review supported with detailed factual findings. (*Id.*) The District Court remanded for that purpose.

The District Court also examined Defendants' contention that documents shared with A&A should be considered confidential

communications. (*Id.* at 13.) The District Court suggested that, separate from other privilege concerns, Defendants had failed to establish that it was reasonably necessary to share documents with A&A in order to further State National and Optimum's interests in litigation, and therefore those documents may have lost their confidential nature. (*Id.*) The District Court also remanded for this Court to determine if documents shared with A&A should be considered confidential. (*Id.*)

## II. Analysis

### A. Documents Shared with A&A Are Not Confidential Because Disclosure to A&A Was Not "Reasonably Necessary" to Further Defendants' Interests in Litigation.

The majority of documents at issue are documents that were shared with A&A. There is an outstanding question as to whether documents shared with A&A retain their confidential nature. (*Id.*) If these documents are not confidential, then regardless of other privilege issues, they are not protected under the attorney-client privilege and are subject to disclosure. Cal. Evid. Code § 952; *U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). Thus, the confidentiality of documents shared with A&A is a threshold issue that the Court addresses first. The Court will then address the remaining documents.

In their original briefing, Defendants asserted that documents shared with A&A were confidential and protected pursuant to Cal. Evid. Code § 952, even though there was no direct attorney-client relationship between A&A and G&R, because sharing those documents was reasonably necessary to further the litigation interests of Optimum and State National. (ECF No. 35.)

The District Court addressed the issue in its March 21, 2014,


Order. (ECF No. 79.) First, the District Court noted that the documents were not protected based on a relationship between A&A and State National. (*Id.* at 14.) Defendants cited *Insurance Co. of North America v. Superior Court* ("INA"), 108 Cal. App. 3d 758, 767 (1980) and *Zurich Am. Ins. v. Superior Court*, 155 Cal. App. 4th 1485, 1504 (2007) for the proposition that disclosure of otherwise confidential information to a reasonably necessary party to further the purpose of the attorney's legal consultation does not destroy confidentiality. The District Court found the comparison inapt, noting, "To the extent the objectors ask the Court to find that communications with A&A are privileged based on the relationship between A&A and State National, they misread *INA*." (ECF No. 79 at 14.) The District Court noted that in *INA*, the entity that confidential information was shared with had a unity of interest and identity with the client entity, whereas here, A&A explicitly held itself out as an "independent" adjuster assigned to investigate the Plaintiff's claim. (*Id.* at 14-15.)

Second, the District Court suggested that A&A would not fall under the exception articulated in *Gen-Probe, Inc. v. Becton, Dickinson and Co.*, 2012 U.S. Dist. LEXIS 49028, *10 (S.D. Cal. April 6, 2012). In *Gen-Probe*, the court recognized that sharing documents with an "independent contractor" may not destroy the confidential nature of those documents if the contractor is "the functional equivalent of a[n] employee [of the client], working in tandem with [the client's employees]." *Id.* at 11. In *Gen-Probe*, the client proved that the contractor at issue was the equivalent of an employee through declarations and exhibits showing that the contractor worked with employees on the project at issue, the nature of the contractor's work was identical to the type of work performed by actual employees, and the contractor was vested with

1 similar levels of direction and supervision as actual employees.  *Id.* at 10-
2 11.  The District Court found that Defendants had failed to show that
3 A&A fell under this narrow exception, stating "State National
4 established only that A&A adjusted claims and corresponded with G&R.
5 State National even emphasized that it does not do claims adjustment.
6 (Objs. 7.)  Hence, A&A's work was not functionally equivalent to State
7 National's."  (ECF No. 79 at 15.)  Based on these findings, the District
8 Court remanded with instruction for this Court to decide whether any of
9 A&A's documents could still be considered "confidential communications
10 necessary to facilitate or effectuate legal counsel (as opposed to claims
11 adjustment)[.]"  (*Id.* at 15-16.)

12 In their supplemental briefing, Defendants contend that A&A
13 should be considered equivalent to an employee of Optimum, rather than
14 an employee of State National.  Defendants note that A&A "was retained
15 by Optimum to survey the Vessels, assist in the adjustment, and draft
16 correspondence to the insured."  (ECF No. 104 at 12.)  Defendants cite
17 two out-of-district cases, *Royal Bahamian Association, Inc. v. QBE*
18 *Insurance Corp.*, 2010 U.S. Dist. LEXIS 101275 (S.D. Fla. 2010) and
19 *Markwest Hydrocarbon, Inc. v. Liberty Mutual Ins. Co.*, 2007 U.S. Dist.
20 LEXIS 27243 (D. Col. 2007), for the proposition that documents shared
21 with an independent adjustor remain privileged.  (*Id.*)

22 Defendants also provide additional information on A&A's job
23 duties.  Defendants state, "Duties assigned to Arnold during the
24 pendency of the claim included surveying the Vessels, communicating
25 with Plaintiff and his attorney, interviewing Plaintiff, and preparing
26 correspondence to send to Plaintiff regarding SNIC's coverage position.
27 [Didier Dec., ¶ 6; Hillger Dec., ¶ 3; Elstein Decl., ¶ 2, Exhibit A, pp.
28 227:18-25]."  (ECF No. 104 at 5-6.)  Defendants also assert that A&A was

the "authorized representative" of Optimum and State National, and "in that capacity also consulted G&R as counsel for Optimum and SNIC to provide it with legal advice. [Didier Dec., ¶ 10; Hillger Dec. ¶ 4][.]" (ECF No. 104 at 6.) Defendants contend that these job duties necessitated sharing information with A&A. (*Id.*) These contentions are supported by the declarations of Wanda Didier, Gene Hillger, and Matthew C. Elstein. (ECF No. 104.)

In his supplemental briefing, Plaintiff reiterates the District Court's analysis of *INA, Zurich,* and *Gen-Probe,* emphasizing that *Gen-Probe's* functional equivalence exception only applies when the agent also meets the "need-to-know" standard for confidential disclosure. (ECF No. 113 at 15-16.) Plaintiff also points to evidence that contradicts the statements in the declarations submitted by Defendants. Plaintiff notes, "As A&A and Optimum representatives testified, A&A was fundamentally not involved in making decisions on coverage– that was exclusively the job of Optimum. (Hillger Depo., 124:1-15; Didier Decl., ¶ 7.)" (ECF No. 113 at 16.) Plaintiff also points to Mr. Arnold's testimony at his deposition that "[A&A] had no authority to do anything" (Arnold Depo., 54:12-17) and that "we were never involved in this actually doing adjusting." (Arnold Depo., 59:6-7.) Plaintiff also contends that "A&A was not an agent of Optimum, and needed Optimum's approval to perform any of its services. (ECF No. 113, Clark Decl., Exh. 3 ¶¶ 1-2.)" Plaintiff also challenges Defendants' assertion that A&A should be considered an authorized representative of Optimum. Plaintiff notes that the contract between A&A and Optimum explicitly disclaims any such relationship where is states, "It is mutually understood that you are an independent contractor, and not an employee or agent of Optimum Claims Services, Inc." (Clark Decl., Exh. 3 ¶¶ 1-2.)

At the June 20, 2014, hearing on this matter, Defendants countered that the fact that A&A did not do adjusting does not mean they were not serving as the equivalent of an Optimum employee. Defendants' counsel compared A&A to an Optimum employee, "just an employee with limited authority." (June 20, 2014 Hearing Transcript, 12:17-18.) Defendants stated that what A&A did in this case is "identical to what a lower level adjuster does at an insurance company." (*Id.* at 18:12-13.) Thus, Defendants contend it was irrelevant that A&A had no authority to make coverage determinations, because that failing does not take A&A out of the *Gen-Probe* requirement that the independent contractor be vested with similar levels of discretion and supervision as employees of the client. Defendants also stressed A&A's involvement in communicating with the insured, contending it was "absolutely necessary for them to know - - A&A to know G&R's legal advice and being able to put together the denial letter or the partial acceptance letters in the insured. Because how else would they know what the position of the company was without [communicating]." (June 20, 2014 Hearing Transcript at 21:1-5.)

Plaintiff's counsel contended that Defendants' embrace of A&A's actions was *post hoc*, now that such an embrace wold be advantageous, and that the deposition testimony of Mr. Arnold and Mr. Hillger establish that A&A was not treated as an employee of Optimum and did not need to know any legal advice provided by G&R. Plaintiff also challenged the importance of A&A's communication with Plaintiff, asserting that "there's absolutely no reason for [A&A] to know what the coverage strategies are, what's going on between Gorgon & Rees and Optimum in order for them to be able to conduct their fact investigation." (June 20, 2014 Hearing Transcript, 24:24-25:1.) Plaintiff suggested that A&A could have simply been given the final coverage determination by

1  Optimum and relayed that information to Plaintiff, thus there was no
2  need for A&A to be involved in the actual discussion of coverage.  "[T]he
3  information that they truly needed to know.  It's very finite.  It's the
4  provisions of the policy that apply related to wear and tear that entitled
5  them to denial of the Jessica and the portions of the policy that entitled
6  them to be able to cut off certain portions of the claim for the Shirley.
7  They didn't need to know anything more." (June 20 2014 Hearing
8  Transcript, 26:5-9.)

9       The burden of establishing that documents shared with A&A are
10 confidential is on Defendants.  *U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir.
11 2011).  The District Court noted that Defendants had failed to carry this
12 burden with respect to documents shared with A&A.  Nothing provided
13 by the Defendants in their supplemental briefing or at the June 20, 2014,
14 hearing changes this analysis.  Contrary to Defendants' arguments at the
15 hearing, it is not enough for Defendants to show that A&A was the
16 functional equivalent of *an* Optimum employee.  To the extent that *Gen-*
17 *Probe* created an exception for independent contractors communicating
18 with corporate counsel, and to the extent that exception applies in this
19 context, Defendants are required to show both that A&A was the
20 functional equivalent of an employee, and that such an employee would
21 need to know of legal advice in order to further the attorney-client
22 relationship.

23      As explained in *Zurich*, "The need-to-know limitation . . . permits
24 disclosing privileged communications to other agents of the organization
25 who reasonably need to know of the privileged communication in order
26 to act for the organization in the matter.  Those agents include persons
27 who are responsible for accepting or rejecting a lawyer's advice on behalf
28 of the organization or for acting on legal assistance, such as general legal

1 advice, provided by the lawyer." 155 Cal. App. 4th at 1500. Nothing in
2 *Gen-Probe* or in *United States v. Graf*, 610 F.3d 1148, 1159 (9th Cir.
3 2010), the case relied on by *Gen-Probe*, supports eliminating the "need to
4 know" requirement, which would fundamentally alter privilege law going
5 forward. Taking Defendants' approach to its logical conclusion, and
6 eliminating the need to know requirement, would give independent
7 contractors even greater privilege protection than a client's regular
8 employees, and would extend the privilege even to unrelated parties with
9 no part in the litigation. Such a holding is untenable, and to the extent
10 that *Gen-Probe* extends the privilege to independent contractors, it can
11 only do so when those contractors "are responsible for accepting or
12 rejecting a lawyer's advice on behalf of the organization or for acting on
13 legal assistance, such as general legal advice, provided by the lawyer."
14 *Zurich*, 155 Cal. App. 4th at 1500.

15 Here, while Defendants may contend that information is typically
16 shared between counsel and an employee with the duties attributed to
17 A&A, they have presented no evidence supporting those contentions.
18 Rather, they have presented conclusory statements in their declarations
19 and at the June 20, 2014, hearing. As described above, those statements
20 are rebutted by the sworn deposition testimony of Mr. Arnold and Mr.
21 Hillger regarding the extent of A&A's duties. (Hillger Depo., 124:1-15;
22 Didier Decl., ¶ 7; Arnold Depo., 54:12-17, 59:6-7; Clark Decl., Exh. 3 ¶¶ 1-
23 2.) That evidence establishes that A&A was principally concerned with
24 fact gathering. The transmission of those facts is not protected by any
25 privilege. Defendants' primary remaining argument for applying the
26 privilege is that A&A was responsible for communicating with Plaintiff
27 regarding Optimum's coverage position, but as Defendants note, this
28 does not necessarily mean that A&A needed to know confidential

information. By its very nature, Optimum's coverage position as stated in letters to Plaintiff is not confidential. The evidence shows that A&A had no role in crafting that position and had no authority to alter that position before presenting it to Plaintiff. Thus, Defendants have failed to establish that A&A's duties required the transmission of confidential information in order to further the attorney-client relationship between G&R and Optimum or State National. Documents shared with A&A are therefore not confidential, and not protected by the attorney client privilege. *Zurich*, 155 Cal. App. 4th at 1500.

Neither of the out-of-district cases cited by Defendants, which are not binding on this Court, alter this analysis. Defendants assert that "independent adjusters are agents of the insurer and their communications are protected by the attorney-client privilege." (ECF No. 104 at 12:22-12:23.) Defendants cite *Royal Bahamian Association, Inc. v. QBE Insurance Corp.,* 2010 U.S. Dist. LEXIS 101275, (S.D. Fla. 2010), in support. In *Royal Bohemian*, the court found that sharing documents with an independent claims adjuster did not destroy the privilege because the insurer "would be handicapped in its ability to evaluate the claim if its field adjuster could not communicate with [the insurer's] outside counsel without waiving the attorney-client privilege." *Id.* at *8-11. Defendants also point to *Markwest Hydrocarbon, Inc. v. Liberty Mutual Ins. Co.,* 2007 U.S. Dist. LEXIS 27243 (D. Col. 2007), where the court again rejected the idea that communication to an independent adjuster destroyed privilege between the insurer and outside counsel on the grounds that the independent adjuster is an agent of the insurer. *Id.* at 10-13.

As an initial matter, neither case was decided under California's privilege law, and therefore their probative value is questionable.

Further, *Markwest* is inapplicable. *Markwest* relied on the fact that the adjuster was an agent of the insurer. Here, the agreement between A&A and Optimum clearly states, "It is mutually understood that you are an independent contractor, and not an employee or agent of Optimum Claims Services, Inc." (February 29, 2012 Optimum Claims Services letter (Clark Decl., ¶ 6, Ex. 3).) Mr. Arnold also stated at his deposition, "we had no authority to do anything." (Arnold Depo., 54:12-17 (Clark Decl., ¶ 5, Ex. 2).) Similarly, *Royal Bahamian* likewise involved an examination of "agents and subordinates working under the direct supervision and control of the attorney[.]" 2010 U.S. Dist. LEXIS 101275 at *3. In both cases, the court found an agency relationship based on the fact that the adjustor was performing the exact same role as an in-house adjustor. Those facts are not present here and the parties have disclaimed an agency relationship. Accordingly, Defendants have failed to establish that documents shared with A&A were necessary to advance the attorney-client relationship. Those documents are not confidential and must be disclosed.

**B.     *In Camera* Review of the Remaining Documents**

In addition to documents shared with A&A, which are not privileged, there are also roughly 150 other pages of documents at issue. While the parties debate the nature of the relationship between Optimum and State National, because this Court has already conducted an *in camera* review, and because the parties have introduced enough evidence on both sides to warrant an in-depth review, the Court has no alternative but to perform a detailed review to determine which documents contain privileged legal advice, and which documents contain unprivileged claims adjusting information. In accordance with the District Court's directions, the Court conducted an *in camera* review of

these remaining documents and finds that the following documents contain privilege attorney-client communications:

- SNIC 2005-2014 is a post litigation claims report containing legal opinions from G&R.
- SNIC 2016-2019 are emails regarding other insured that are irrelevant and contain confidential legal advice.
- SNIC 2092-2093 are emails between Optimum employees discussing confidential legal advice.
- SNIC 2094-2098 are emails and attachments between Optimum and Wind River Reinsurance discussing confidential legal advice.
- SNIC 2146-2147 are communications between G&R and Optimum containing confidential legal advice.
- SNIC 2158-2167 is a letter from G&R to Optimum containing confidential legal advice.
- SNIC 2168-2177 is a letter from G&R to Optimum containing confidential legal advice.
- SNIC 2192-2193 is an email from Wind River to Optimum containing confidential information regarding the ongoing litigation.
- SNIC 2217-2218 is an email from G&R to Optimum containing confidential legal advice.

The remainder of the documents contain unprivileged claims-adjustment information. As the District Court noted, many documents such as State National's claims log (SNIC 1812-1820), a March 13, 2012, note from Ms. Didier (SNIC 1821-24), and email exchanges between Mr. Soares and Ms. Didier discussing claims adjustment (SNIC 2224-26), do not clearly contain attorney-client information, and this Court can find

no basis for privilege even in light of the additional evidence supplied by Defendants.[1]  Only the documents designated above contain privileged information.  The remainder must be disclosed.

**IT IS SO ORDERED.**

DATED: July 21, 2014

Hon. Mitchell D. Dembin
U.S. Magistrate Judge

---

[1] The District Court also expressed skepticism whether SNIC 2217-2218 clearly contained privileged information. This Court finds, however, that based on further review and in light of the additional information provided by the parties, SNIC 2217-2218 does contain privileged information.